FILED BY ____ D.C.

**Aug 31, 2020**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## 20-20189-CR-MOORE/BECERRA
Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

PAUL WAND,

        Defendant.

_____/

## INFORMATION

The United States Attorney charges:

## GENERAL ALLEGATIONS

At all times material to this Information:

### The CareCredit Program

1.      Synchrony Bank ("Synchrony Bank"), a federally insured bank, was a "financial institution" as defined by Title 18, United States Code, Section 20.

2.      Synchrony Bank offered to the public CareCredit, a health care credit card that could be used to pay for out-of-pocket medical expenses not covered by medical insurance, and provided by a pre-approved network of health care providers who were enrolled with CareCredit. Health care providers who applied to participate in the CareCredit network and were approved by Synchrony Bank could offer CareCredit cards to their patients.  Providers who enrolled in CareCredit agreed to abide by, among others, the following terms, each of which was material to Synchrony Bank:

      a.      Patients' CareCredit accounts could only be charged for costs incurred or services

actually rendered within thirty days of a charge;

b.      CareCredit providers could only process charges for the sale of goods or care rendered by the provider enrolled with the CareCredit program; and

c.       CareCredit providers or a member of the provider's staff were required to inform CareCredit cardholders (i.e., the patients receiving the services) that the deferred interest program for CareCredit cards carried an annual percentage rate of 26.99.

### The Medicare Program

3.      The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

4.      Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

5.      Medicare programs covering different types of benefits were separated into different program "parts." Part B of the Medicare Program was a medical insurance program that covered, among other things, certain physician and outpatient services, and other health care benefits, items and services.

6.      For Florida beneficiaries, Medicare Part B's insurance coverage for physician and outpatient services and related health care benefits, items, and services was administered by First

2

Coast Service Options, Inc. ("First Coast") pursuant to a contract with HHS.

7.     Physicians, clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date that the services were provided, the cost of the services, and the name and provider number of the physician or other health care provider who ordered or performed the services.

8.     The Medicare Part B program generally would pay a substantial portion of the cost of the physician or outpatient services or related health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other licensed, qualified health care providers.

9.     Payments under Medicare Part B were often made directly to the health care provider rather than to the beneficiary.   For this to occur, the beneficiary would assign the right of payment to the health care provider.  Once such an assignment took place, the health care provider would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

10.     Under Medicare's rules and regulations, physician and outpatient services and related health care benefits, items, or services must be medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider in order to be reimbursed by Medicare.

3

11.     Manual spinal manipulation was a health care service that may have been eligible for reimbursement by Medicare under Part B.  Medicare would reimburse for manual spinal manipulation services only when certain conditions were met, such as when the services were provided by a chiropractor or other qualified provider.  Medicare Part B did not cover any other services or tests provided or ordered by a chiropractor.

### The Defendant, Related Companies and Individuals

12.     Defendant **PAUL WAND** was a resident of Broward County and a clinical neurologist medical doctor ("M.D.").   **WAND** was enrolled as a Medicare provider and a CareCredit provider.

13.     Dynamic Medical Services, Inc. ("Dynamic Medical") was a corporation organized under the laws of the State of Florida with a principal place of business located at 1490 W 49th Place, Suite 204, Hialeah, Florida 33321.

14.     Dennis Nobbe was a resident of Miami-Dade County, a chiropractic medical doctor, and the president of Dynamic Medical Services.  In or around 2010, Nobbe was terminated from the CareCredit program as a result of engaging in "risky" transactions.

### Conspiracy to Commit Wire Fraud, Bank Fraud, and Health Care Fraud (18 U.S.C. § 1349)

From in or around June 2017, and continuing through in or around November 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### PAUL WAND,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Dennis Nobbe and others known and unknown to

the United States Attorney to commit certain offenses against the United States, that is:

    a.    to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343;

    b.    to knowingly, and with intent to defraud, execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, including Synchrony Bank, which scheme and artifice would employ a material falsehood, and to knowingly execute, and cause the execution of, a scheme and artifice to obtain moneys and funds owned by, and under the custody and control of, one or more financial institutions, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, in violation of Title 18, United States Code, Section 1344(1) and (2); and

    c.    to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in

connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## Purpose of the Conspiracy

15.    It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent (i) applications to Synchrony Bank for CareCredit accounts; (ii) claims to Synchrony Bank for services that were medically unnecessary, never provided, not provided as represented, and not eligible for payment through Care Credit; and (iii) claims to Medicare for services that were medically unnecessary, that were not eligible for reimbursement, and that were never provided as represented; (b) concealing the submission of false and fraudulent claims to Synchrony Bank and Medicare; and (c) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others:

16.    **PAUL WAND** submitted a false and fraudulent application to Synchrony Bank to become an approved health care provider in the CareCredit network, in which **WAND** falsely represented that **WAND** would provide treatment to CareCredit patients, and that CareCredit patients would only be billed for services actually rendered within thirty days of a charge to their CareCredit account.  In so doing, **WAND** concealed from Synchrony Bank that Dennis Nobbe, rather than **WAND**, would be the person treating and charging the CareCredit patients.

17.    Dennis Nobbe encouraged his patients at his chiropractic clinic, Dynamic Medical,

6

to open CareCredit consumer accounts, and concealed from these patients the fact that he was not an authorized CareCredit provider.

18.     **PAUL WAND** and Dennis Nobbe used **WAND's** CareCredit provider account to submit and cause to be submitted charges to the CareCredit consumer accounts for Dynamic Medical's patients for services that were performed by Dennis Nobbe rather than **WAND**, that were not performed at all, and that were not rendered within thirty days of the charges to these CareCredit accounts, and thus, were not eligible for payment through CareCredit.

19.     Upon a charge placed on a Dynamic Medical patient's CareCredit account through **PAUL WAND**, CareCredit would deposit, via interstate wire communications, into bank accounts controlled by **WAND,** the amount charged to a patient account, less processing and transaction fees.

20.     As a result of such false and fraudulent charges to Dynamic Medical patients' CareCredit cards under the name of **PAUL WAND**, Synchrony Bank paid approximately $1,315,560 into bank accounts controlled by **WAND**.

21.     **PAUL WAND** also signed documents enrolling himself with Medicare as a provider so that **WAND** could submit claims to, and receive payments from, Medicare.  In the enrollment documents, **WAND** promised (i) to abide by Medicare rules, regulations, and program instructions; (ii) not to knowingly present or cause to be presented false or fraudulent claims for payment by Medicare; and (iii) not to submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

22.     In exchange for kickbacks and bribes from Dennis Nobbe, **PAUL WAND** submitted and caused to be submitted claims to Medicare that falsely and fraudulently represented

that **WAND** had performed certain services when, in truth and in fact, those services had been performed by Dennis Nobbe, a chiropractor, and were thus not eligible for any reimbursement from Medicare.

23.     **PAUL WAND** entered into sham contracts with Dennis Nobbe that disguised the kickbacks and bribes as payments from Dennis Nobbe to **WAND** for lease payments and management, marketing, and merchandising services.

24.     As a result of these false and fraudulent claims, Medicare paid approximately $515,251 to bank accounts controlled by **PAUL WAND**.

25.     **PAUL WAND** wired approximately $1,091,080 of funds that were falsely and fraudulently obtained from Synchrony Bank and Medicare to Dennis Nobbe, via interstate wire communication. **WAND** retained approximately $366,162 of the falsely and fraudulently obtained CareCredit and Medicare funds for himself, for his personal use and benefit and the use and benefit of others.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
### (18 U.S.C. § 982)

1.     The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **PAUL WAND**, has an interest.

2.     Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Sections 1343 or 1344, as alleged in this Information, the defendant shall forfeit to the United States any property constituting, or derived from, proceeds the person obtained

directly or indirectly, as the result of such violation, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

3.      Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1347, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

4.      The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a forfeiture money judgment of $366,162.

All pursuant to Title 18, United States Code, Section 982 and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

ROBERT ZINK
CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ALLAN MEDINA
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By: _____
SARA CLINGAN
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

v.

CASE NO._____

**CERTIFICATE OF TRIAL ATTORNEY***

PAUL WAND,

**Superseding Case Information:**

_____Defendant._____/

| | | | |
|---|---|---|---|
| New defendant(s) | | Yes ____ | No ____ |

**Court Division:** (Select One)

✓ Miami ___ Key West ___ FTP
___ FTL ___ WPB

Number of new defendants ____
Total number of counts ____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)   No____
   List language and/or dialect   _____

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

   | | | | | (Check only one) | |
   |---|---|---|---|---|---|
   | I | 0 to 5 days | ✓ | | Petty | |
   | II | 6 to 10 days | | | Minor | |
   | III | 11 to 20 days | | | Misdem. | |
   | IV | 21 to 60 days | | | Felony | ✓ |
   | V | 61 days and over | | | | |

6. Has this case previously been filed in this District Court?   (Yes or No)   No____
   If yes: Judge _____   Case No._____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No____
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers:   20-mj-03236-JB _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)      No____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?      Yes ____   No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?      Yes ____   No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?      Yes ____   No ✓

_____
SARA CLINGAN
DOJ TRIAL ATTORNEY
COURT ID No. A5502508

*Penalty Sheet(s) attached

REV 6/5/2020

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**          **PAUL WAND**

**Case No:** _____

Count #:   1

_____ Title 18, United States Code, Section 1349 _____

_____ Conspiracy to Commit Wire Fraud, Bank Fraud, and Health Care Fraud _____

**\*Max Penalty**:    Twenty (20) years' imprisonment _____

Count #:

_____

_____

**\*Max Penalty**: _____

Count #:

_____

_____

**\*Max Penalty:** _____

Count #:

_____

_____

**\*Max Penalty:** _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| | ) | |
| PAUL WAND, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*